Woodruff v. Ward.

---

EDWARD C. WOODRUFF et al., exrs., appellants,

*v.*

HELEN M. WARD et al., respondents.

A testator directed his executors to invest certain funds in "first-class, interest-paying securities," and to pay the interest derived therefrom semi-annually to certain designated beneficiaries for life, and to pay the principal to others after the termination of the life estate of those first named. The funds at the testator's death were left by him invested in second mortgage railroad bonds, railroad stocks and bank stocks.—*Held*, that the orphans court had no power, under the one hundred and fifteenth section of the orphans court act (*Rev. p. 777*), on the application of the executors, to order that the investments of the funds be continued in the securities left by the testator, because such order is not within the object of that section of the act. The section does not apply to moneys which the fiduciaries therein mentioned are required to invest, but such as they are required to hold.

Appeal from decree of Union orphans court.

*Mr. G. T. Parrott,* for appellants.

*Mr. E. W. Ward,* for respondents.

THE ORDINARY.

The executors of Moses M. Woodruff, deceased, applied to the orphans court of Union county by petition dated June

Woodruff *v.* Ward.

11th, 1881, for an order concerning the investment of certain moneys which, by the will, they were directed to invest. The petition sets out the clauses of the will under which the investment is made necessary; states that the estate, which is large, consists of· real and personal property, and to a great extent of stocks and other securities; that the executors have been unable to make proper investment of the money in the securities recognized by the court as allowable for trust money in the absence of any direction of the court on the subject; that they are desirous of retaining the investments in which the personal estate came to their hands, and of having specific directions that the moneys which they by will are to invest be regarded as being duly invested therein, by and under the order of the court, and they state the particulars of the assignment of securities which they propose to make to each of the funds, and for security therefor. The securities consist of second mortgage railroad bonds, railroad stocks and bank stocks. The orphans court not only made the desired order so far as authorizing the investments was concerned, but went further, and fixed the dates of the assignments as of precedent periods, so as to comport with their views of the rights of the first takers of the funds in respect to the enjoyment thereof. The funds were three in number; two—one of $8,000 and the other of $7,000—were for the benefit of the two daughters of the testator for life, with limitation over, and the other $7,000 was for the benefit of his granddaughter, the interest to be payable to her until she shall attain the age of twenty-five years, when she is to have the principal, and the fund is limited over in the contingency of her death before attaining to that age. The court directed that the assignment of securities for her be made as of the day next succeeding the day of the testator's death, which took place April 11th, 1880, and those for his daughters as of the 11th of April, 1881, one year from his death, and they directed that the costs and counsel fees of the proceeding be paid out of the estate. The executors (who are the residuary legatees) appeal from the order. The real ground of objection to the order for investment must, inasmuch as the executors themselves recommended the invest-

Woodruff v. Ward.

ment to the court and sought from them authority to make it, be presumed to be that the court undertook to fix as dates as of which the assignment of securities for the respective funds was to be made, precedent periods, the effect of which was to give the securities to the funds at a price lower than the market value at the time of making the order, and also to give to the beneficiaries the benefit of the excess of the dividends, received by the executors on the stocks, over what they had paid to the beneficiaries as interest, which payments were made at the legal rate of interest. By the will the testator gave the funds to his executors in trust, as before mentioned, and directed them to keep them invested in first-class interest-paying securities, and to pay the net proceeds of the interest thereon to the first beneficiaries for the designated periods, and then to pay over or dispose of the principal as directed in the contingencies named.

The section of the orphan's court act (the 115th) under which the court must have acted in the matter, provides that executors, administrators, guardians or trustees may, by direction of the orphans court, put out at interest all moneys in their hands which they are or may be lawfully required to retain, whether the same belong to minors, legatees or other person or persons, upon such security and for such length of time as that court will allow, and that if the security so taken *bona fide* and without fraud shall prove insufficient, it shall be the loss of the minors or other person entitled thereto, and that it shall be the duty of executors, administrators, guardians and trustees, in cases where the estates of minors or other persons in their hands may be materially benefited thereby, to make application to that court for such direction, and that in case they shall neglect to do so, they shall be accountable for the interest that might have been made thereby. But (it is further provided) if no person who will be willing to take the money at interest, giving such security, can be found by the executors, administrators, guardians or trustees, nor by any other friend or friends of such minors or others, then the executors, administrators, guardians or trustees shall, in such cases, be accountable for the principal money only until it can be put out at interest, as aforesaid; provided, nevertheless,

that in any case where executors, administrators, guardians or trustees use the money of minors or others which shall come to their hands, they shall not only be accountable for the principal but for the interest thereon. *Rev. p. 777.* The object of this provision of the law was to secure to beneficiaries of certain funds, which might otherwise lie idle in the hands of their fiduciaries, the benefit to arise from investing them ; and it applies only to moneys in the hands of the fiduciaries, which they may be lawfully required to hold, and which for that reason they would not invest; such as money held to await the arrival of a certain time, or the happening of a certain contingency, money which they might be excused from investing by the fact that they ought reasonably to hold it in order to pay it over when duly called for.   The act takes away such excuse for not investing the money, unless in addition there has been application to the orphans court in the premises, and a refusal by that court to direct the making of the investment, or a direction on their part with which it has been impracticable, for want of the necessary opportunity, to comply.   And the act says that even in the latter case, if the fiduciary uses the money himself, he shall pay interest for it.   It was never intended that the act should admit of a construction which would authorize the orphans court to direct the investment of moneys which the fiduciaries mentioned might be required by law not to hold, but to invest.   In this case the orphans court has made an order authorizing the investment of trust moneys, which the executors by the will were expressly directed to invest in " first-class interest-paying " or " interest-bearing " (the testator uses both expressions) " securities," in securities not contemplated by the testator, nor allowed by law, but against which the testator expressly and explicitly discriminated.   He had stocks and mortgages.   He knew that the one bore dividends while the other bore interest.   He knew what was meant by the language he used when he directed that the trust funds set apart for his daughters and granddaughter should be invested in " first-class interest-paying securities." He did not mean stocks or second mortgages.   When he provided that the interest should be paid semi-annually, as he did

in the bequests in favor of his daughters, he evidently contemplated that the fund would be invested on mortgage, on which the interest should be made payable semi-annually. Under such a direction as to investments it would be held that only such securities as the court of chancery allows for trust funds would be allowable. *Ward* v. *Kitchen, 3 Stew. Eq. 31.* The section under consideration has never been construed, so far as I am aware, although it is of long standing. What was said in reference to it in *Tucker* v. *Tucker, 6 Stew. Eq. 235,* was said in connection with the investment of moneys, which were in the executor's hands, under circumstances such as would have justified him in applying to the orphans court for directions as to the investment thereof. This case is not within the provisions of the section. It is wise to confine the scope of the act to the cases which are clearly within its terms, for though the action of the court under it is indeed discretionary, it is of such a character that it cannot, in justice to those whose interests may be affected by it, be held not to be subject to review on appeal. And if the order for investment is subject to an appeal, it is obvious that, speaking generally, no investment can safely be made pursuant to it, at least until after the time for appealing shall have elapsed, and, if there be an appeal, not then until the appeal shall have been determined. These embarrassments are worthy of consideration, in connection with the proposition that the section be construed so liberally as to extend to cases not within its terms. The decree of the orphans court will be reversed, except as to so much of it as relates to the payment of costs and counsel fees out of the estate. The executors (who, as before stated, are the residuary legatees) made the application, and all that has been done in the matter has been done in pursuance of their application. The action taken by them was not only for the benefit of the daughters and granddaughter, but for the benefit of those to whom the funds were limited over, also. The costs and expenses should, under the circumstances, be allowed as costs of executing the will, and the costs of this appeal will also be paid out of the estate, with a counsel fee of $50 to each side.